HAMLIN, Justice.
The sole issue to be adjudicated and determined in this controversy is whether certain property[1] owned in indivisión by plaintiffs and defendants should be divided in kind or by licitation.
*792 Plaintiffs, Helen Bordelon, Dr. Lacy Bordelon, Webb S. McGinty, Mary Catherine Jones, Joe King: McGinty, Herschel McGinty, Jr., Webb McGinty, Ferda Sterkx, Elizabeth Rhoad, and A. Hanna Sterkx, alleging' that they were the owners in indivisión of a three-fifths interest in certain described property, supra, located in Rapides Parish, and were unwilling to longer hold the property in indivisión, brought suit praying for its partition by licitation. Named as defendants'were Walter W. Sterkx, Delia S. Craighead and Shelley Craighead, owners of a two-fifths interest.[2]
The trial court appointed experts to determine whether the property was divisible in kind; their report[3] was to the effect that the property was not divisible in kind and that an attempted division in kind would certainly diminish the total value of the property. The testimony of a number of expert witnesses was also heard during trial on the merits, and, after careful and *793 lengthy deliberation, the able trial judge concluded that the mode of partition most convenient and most advantageous for the general interest of the co-owners was partition by licitation. Only the defendant Walter W. Sterkx appealed from judgment in favor of plaintiffs.
*792 “/s/ James N. Chambers James N. Chambers, Realtor”
*793 Appellant contends that the Sterkx property is divisible in kind and can be divided in such manner without a diminution in its value. In his brief he avers:
“The tract of land which is the subject of this suit is so large and so valuable as to make it difficult, if not impossible, for one co-heir to protect himself adequately and fully at a public sale, made without the benefit of appraisement. It is part of the record that one of the defendants who originally opposed a partition by licitation and a public sale without appraisement of this tract of land worth over One Million Dollars, changed her position on the date of trial. The remaining co-heir, who is a defendant in the event a partition by licitation is decreed, must be able to finance four-fifths of the price of adjudication, while the other four-fifths may take over his interest at a price wholly disproportionate to its true value. The framers of our Civil Code were men of unusual ability, wisdom and understanding, and it was for such reasons, as set forth above, that they wrote into our law, by Codal Article, the principle that a co-heir is entitled to his part of specific property if it can be given to him without imposing loss or inconvenience on his co-owners. There is no contention in this case that a partition in kind would impose loss or inconvenience on any of the co-owners.”
There is no conflict in the testimony as to the fact that the large acreage involved is comprised of various types of property and is worth over a million dollars,
Mr. James N. Chambers, a realtor engaged in all phases of real estate and familiar with the instant property for over fifty years, testified as a witness for plaintiffs. He stated that the property could be divided into the following nine types or tracts:
1. Masonic Drive frontage with a depth of 542 feet, containing 16.09 acres, suitable for commercial usage;
2. Lee Street frontage with a depth of 300 feet, containing 8.03 acres, suitable for commercial usage;
3. Sterkx Road frontage with a depth of 250 feet, containing 9.27 acres, suitable fop commercial usage;
4. MacArthur Drive frontage with a depth of 330 feet, containing 6.82 acres, suitable for commercial usage;
5. A tract, containing 14.73 acres, to the rear of the four above and running back to a canal, being best suited as warehouse property;
6. The area occupied by the canal, containing 5.08 acres;
7. A triangular area of Wioo of an acre, separated from tract 5 by a canal;
8. A tract of low woodland, containing 70.25 acres, to the rear of tract 5 and separated from it by a canal;
9. Floodland, containing 182.76 acres, suitable for residential purposes.
Mr. Chambers did not include within the above classifications a tract of 1.20 acres separated from the main body of land by Sterkx Road. There seems to be no contention that this small tract is not divisible in kind.
To substantiate his conclusion that the property herein could not be divided in kind, Mr. Chambers set forth the following reasons:
*794 “Yes, I have prepared six reasons why and if the Court will bear with me, I’ll read them. First, there are several different types of property involved including commercial property on Mac Arthur Drive, commercial property on Lee Street, commercial property on Sterkx Road, commercial property on Masonic Drive, a warehouse area and both cleared land and cut over land that would be most suitable for residential development. Each of these types of land would have to be considered as a separate fact— tract and allotted into five pieces. Second, the different property owners might have different ideas of development. The development by one in a manner that did not fit in with the overall pattern would probably lessen the value of the remaining property. Third, in order to develop the residential area it would be necessary to plan for streets, utilities, sewerage, building restrictions and other matters. This could only be done by treating the tract as a whole or by an agreement of all the parties thereto. Fourth, the residential property could probably be divided into different types of subdivisions in order to obtain the maximum value for the land. Fifth, in the absence of building restrictions and an orderly plan of development the owner of part of the land could use it for purposes that would destroy or deteriorate the value of the remaining land. Sixth, this is all very high priced land and the only way that the potential value of the tract as a whole could be realized would be to develop it in an orderly manner and over a period of time. This would not be possible if it were divided into five parts without any complete plans for the entire property.”
Mr. Chambers conceded that lines could be drawn on a plat outlining the property, which would actually divide it into five pieces of ground, but that such a division would diminish the value of the individual pieces and of the whole. However, throughout his testimony he insisted that the property could not be conveniently divided in kind without a present loss and inconvenience to the co-owners thereof.
Mr. M. C. Gehr, a realtor engaged in mortgage loan and real estate appraisals, testified in behalf of plaintiffs to the effect that the instant property could not be divided in portions without a diminution in value of each portion as compared to the whole. He also typed the property. He stated that in order to develop an area commercially, a large tract of land was required. He further stated that if the residential portion of the property were to be divided into five parcels, the following difficulty would be encountered:
“Well, the difficulty in dividing up a tract like that into smaller subdivisions without some coordination would be that you’d have maybe one party might want to subdivide one area for the purpose of say building homes in the eight thousand dollar class, whereas the one right next to him might want to develop a little higher price subdivision, want to have say twelve thousand dollar homes, and another one might want to put in fifteen thousand dollar homes. Well, whenever you start a subdivision, you want to be sure that the surrounding area is in keeping with the subdivision that you are going to start, otherwise your property immediately depreciates in value unless you keep it on that — on an even keel with the surrounding property. Another thing is that on the laying out of your streets, unless you [have] cooperation and coordination of the planning well you won’t be able to have through streets in that property which would not be good as far as the individual subdividers are concerned but also from the standpoint of the city if they ever happen to extend out, the running *795 of these sewer lines. It would make it run into quite a bit more money on account of having to skirt around a subdivision in order to get into the one right next to it. And if they — ■ each subdivider has his own ideas as to what type of restriction he would want to place on that property, whereas if you could coordinate the entire area and build it up well I’d think that you’ll find that you can get a whole lot more for your individual lots than what you can if there is no cooperation or coordination of the planning of the various subdivisions.”
Although Mr. Gehr admitted that the property could be divided into five parcels, he stated that he did not think such a plan was feasible because of inconvenience to the co-owners and a diminution in value. He concluded that development as a whole would bring the highest return on the property.
Mr. Champ Baker, a realtor who had engaged in the development of subdivisions, typed the property. He stated that certain sections had higher values than others and that the property could not be divided in kind without a loss of value to the whole. He testified that even if the property were divided in sections — commercial, residential, etc. — and each root shared in a division of such sections, there would be a diminution in the value of the whole; that in order to have the most favorable development of the property, a major plan or overall development was necessary. He stressed the fact that various ownerships caused loss of control of the whole. He explained the fact that in parting with ten acres for a consideration of $200,000 to the Wein-gartens, the Sterkx heirs contemplated a tremendous undertaking because of the large sum paid by the buyers. Such development would not depreciate the Sterkx tract. Mr. Baker concluded that a division of the property into five lot's would bring about a present and potential loss.
Mr. Walter W. Sterkx, Jr., a licensed and bonded realtor operating a partnership with his father in the City of Alexandria, testified that the property could be fairly and equitably divided in kind. He attempted to substantiate this conclusion by submitting a plan for a division of the property into five parcels, and stated:
“It was prepared from a subdivision layout for the purpose of dividing the property into five groups whereas each person would receive in value an equal part. Despite the fact that the lines are apparently go in all directions, don’t follow any definite pattern, when that is placed upon that particular subdivision to form a pattern, and any one area can be developed separate from the other.”
Mr. Sterkx, Jr. did not specify area in his plan, stating that he left such a matter up to the experts. Although the divisions did not all front on the same streets, he said he attempted to equalize the portions in value.[4] However, he gave no reasons nor *796 did he testify to any facts to support his conclusions.
Defendant Mr. Walter Sterkx, Sr., a realtor, stated that his father and mother had owned the instant property and he had assisted them in the management and control thereof until their deaths in 1935 and 1947, respectively, and that he acted as administrator of his mother’s succession. He was of the opinion that the property could not be developed as a whole because of the vastness of the area, and concluded that it could be divided in kind without a diminution of the value of the whole. He also said that there would be no diminution in potential value. Mr. Sterkx, Sr., also, gave no reasons nor did he testify to any facts to support his conclusions.
The weight of the foregoing testimony is to the effect that a partition by licitation is the most feasible mode of dividing the instant property. All witnesses testified that the property could be divided into five parcels or lots; however, a preponderance of the evidence shows that such a division would diminish the value of the whole. Some of plaintiffs’ witnesses testified that a division in kind would diminish the potential value of the property, but a great deal of their testimony is devoted to the diminution of present value by such a division.
In considering the law, as applied to the above facts, we find that Article 1336 of the LSA-Civil Code provides:
“The judge who decides on a suit for a partition and on the mode of effecting it, has a right to regulate this mode as may appear to him most convenient and most advantageous for the general interest of the co-heirs, in conformity, nevertheless, with the following provisions.”
Article 1337 of the LSA-Civil Code gives to the co-heirs their right to demand a partition in kind of the movables and immov-ables of the succession. This right is not *797 absolute, however, because Articles 1339 and 1340 of the LSA-Civil Code state:
“When the property is indivisible by its nature, of when it can not be conveniently divided, the judge shall order, at the instance of any one of the heirs, on proof of either of these facts, that it be sold at public auction, after the time of notice and advertisements prescribed by law, and in the manner hereinafter prescribed.” Art. 1339.
“It is said that a thing can not be conveniently divided, when a diminution of its value, or loss or inconvenience of one of the owners, would be the consequence of dividing it.” Art. 1340.
In Raceland Bank & Trust Co. v. Toups, 173 La. 742, 138 So. 652, 653, we made the following statement, which is apposite to the present matter:
“When two or more major persons who are present own property in common, a partition thereof may be made by them in such form and by such act as they may agree upon. If, on the contrary, all the co-owners are not present, or if there be among them minors or persons interdicted, or if those present and of age do not agree to the partition or the manner of making it, it shall be made judicially, in the form prescribed by the Civil Code. Civ.Code, art. 1322 et seq. Each of the co-proprietors may demand in kind his share of the property (Civ.Code, art. 1337), and this method of partition is favored by our law. Every partition should be made in kind if the property be susceptible of division, unless such division would result in inconvenience or loss to the co-owners. Kaffie et al. v. Wilson, 130 La. 350, 57 So. 1001; Hoss v. Hardeman et al., 156 La. 371, 100 So. 532.
“But the right of a co-owner to partition property which he holds in common with another is absolute. No one can be compelled to hold property with another (Civ.Code, art. 1289), and if the property is not divisible in kind, or if a division in kind cannot be made without loss and diminution of its value, the court must order it sold at public auction at the instance of any of the parties in order to effect a partition. It follows therefore that even though a partition by licitation would result in pecuniary loss to one of the co-owners because of the depressed value of the property at the time the partition is demanded, the sale must be made.”
“When property is partitioned in kind, if it is owned in common by several persons in equal shares, the division must be so made that each co-owner receives a share equal in value to the share of each of the other co-owners. When the property to be partitioned consists of one tract of land, the lots need not necessarily be of equal area or value. If the lots are of unequal value, such inequality is compensated by means of a return of money which the co-heir having a lot of more value than the others pays to his co-heirs. R.C.C. Article 1366.
* * * * * *
“Of course, property cannot be divided in kind if the consequence of such division would be a diminution of the value of the entire property. R.C.C. Article 1340. In other words, the total value of the lots should not be less than the value of the tract as a whole.” Pryor v. Desha, 204 La. 575, 15 So.2d 891, 895.
“This court has consistently followed the provisions of these articles of the code when lands cannot be conveniently divided without diminution of value or loss or inconvenience to the owners. In most of the cases, this court has stated that the law favors partition in kind, but that it is not *798 obligatory when the property cannot be conveniently divided without a diminution of value or loss or inconvenience to the owners. Grouchy v. Williams, 161 La. 909, 109 So. 545; Raceland Bank & Trust Co. v. Toups, 173 La. 742, 138 So. 652; Pryor v. Desha, 204 La. 575, 15 So.2d 891.” Welch v. Pitre, 216 La. 980, 45 So.2d 363, 365.
Applying the law and jurisprudence, supra, in the light of the testimony, supra, to the instant facts, we find that the land herein involved cannot be divided into lots or parcels without a diminution in value of the whole; in other words, as the evidence shows, the division into five would not equal the sum of the whole. We also find that .because the entire tract is composed of many types of property the inconvenience of a division in kind would be too great. Plaintiffs bore their burden of showing us the impracticability of a division in kind; defendant-appellant did not offer sufficient evidence to outweigh this presentment.
We agree with the following statement of the trial judge:
“Within the knowledge of this writer, the facts of this case make it unique in the annals of our jurisprudence in two respects. First, while the acreage involved is substantial, we are not dealing with rural property but instead with urban lands destined for development as commercial and residential property. Secondly, the inconvenience and loss to be sustained by the individual owners, if the land be divided, are not only inherent in the act of division itself but will accrue subsequently in the sale and development of the proposed lots. These are considerations which must not be lost sight of in determining the matter now before the Court.
“Undisputed are the claims that the Sterkx Farm is comprised of at least six different types of property with considerable variation in the values of each of these types. With the obvious impossibility of dividing this property into five lots each of which will contain a share of the varying parts, it is then impossible to effect a division in kind in accordance with the rule laid down in the cited authorities, even though the lots may be formed in such manner that they are equal in value. * * * Accordingly, the conclusion is forced that the property is indivisible by its nature within the meaning of the codal articles.”
In Oliver v. Robinson, 221 La. 658, 60 So.2d 76, 78, we stated:
“The issue therefore resolves itself into a question of fact and of the weight to be given to the testimony of the witnesses who testified for the plaintiffs and those who testified for the defendants. The trial judge, who observed and heard the witnesses testify, concluded as evidenced by his judgment * * * that the property could not be divided in kind without diminishing its value, and, after reading the record, we cannot say that he erred in his findings.”
For the reasons assigned, the judgment of the trial court is affirmed.

. The trial judge, who has lived within a few blocks of the Sterkx property (property herein involved) for sixteen years, described it as follows:
“The main body of property herein involved is an irregular shaped tract containing 313.79 acres. An examination of the maps and surveys filed in evidence reveals that it is bounded on three sides by the city limits of the City of Alexandria and on another side by McArthur Drive, the by-pass highway around the City and the main traffic artery in the area. It is, in fact, a wedge in the City limits which have been extended to Mc-Arthur Drive on all sides and actually portions of the property are within the corporate limits. The portion of the tract fronting on McArthur Drive is separated from the main body of the land by a drainage canal and a small portion of the former area is further separated by another canal. Additionally, there is another tract of 1.20 acres separated from the main body of land by what is known as the Sterkx Road. The several buildings on the property admittedly have inconsequential value and they present no problem in connection with determination of the mode of partition.
“The property we here deal with is of great value, a conclusion well proved by the fact that recently ten acres of it were sold to the Weingarten Realty Company of Houston, Texas for $200,000.00, with the apparent purpose of 'the purchasers being to erect a super-market on the site. This acreage fronts on Masonic Drive near its intersection with Texas Avenue and is just opposite and across Masonic Drive from the St. Frances Cabrini Hospital, one of the larger and most modern privately owned hospitals in the state. Further, just across Masonic Drive from the Sterkx property is *792 the Aiken School, one of Alexandria’s new large public grammar schools.
“To partially complete the picture, it may be noted that the -line of the subject property beginning near Masonic Drive and running generally parallel with and not far removed from Texas Avenue is bounded by property fronting on Texas Avenue and on which have been con structed a Catholic church, church school, youth recreation center and orphanage. In the área are numerous residences of the better type. However, as the Sterkx property approaches Lee Street the area is one of cheaper residences and numerous varying businesses. On Lee Street, across from the Sterkx property, are low-type residences and a negro housing project. Back of’ these properties is a large negro section of the City of Alexandria.”

. It is not disputed that the ownership of the property is .s follows:
One-fifth. . . . .Helen S. Bordelon and Dr. Lacy Bor-delon;
One-fifth. . . . .Webb S. McGinty, Mary Catherine Jones, Joe King McGinty, Herschel McGinty, Jr. and Webb McGinty;
One-fifth. . . . .Ferda Sterkx, Elizabeth Rhoad and A. Hanna Sterkx;
One-fifth. . . . .Walter W. Sterkx;
One-fifth. . . . .Delia S. Craighead and Shelley Craig-head.

. “The undersigned, appointed as experts to determine whether the property involved in the above numbered and entitled suit is divisible in kind, report as follows:
“The property involved is a tract of approximately three hundred (300) acres, with part of the property fronting on Masonic Drive, some property fronting on Lee Street and a portion fronting on MacArthur Drive; a good bit of the property being open land and a large amount rather low woodland. Some small portion of the property would liave a high value as commercial property, this being particularly the property on MacArthur Dx-ive and the property fronting on Lee Street. On the other hand, the inner portion of the property would have little value — as commercial property, but would be valuable as residential property. However, there are no streets through any of the property, no sewerage and no utilities. Although the property could be divided in kind by agreement of all parties involved, this would necessarily entail laying out streets, alleys, sewerage lines, utilities, etc., all of which would have to be done by agreement and by .the additional investment of a tremendous sum of money. Since we understand that this is not within our province as experts, we could not take into consideration such improvements in stating whether the property is divisible in kind in its present state.
“This property has a high potential value, both for residential and commercial pui’poses, if it is handled as a whole and additional sums of money are used to improve the property. However, as it now stands, with no improvements whatever and no streets or utilities, it is our opinion that the property is not divisible in kind and that an attempted division in kind would certainly diminish the total value of the property.
“This report filed with the Clerk of Court at Alexandria, Louisiana, on this 2nd day of November, 1956.
“/s/ Irion Lafargue Irion Lafargue, R.S.

. The testimony of Mr. Walter W. Sterkx, Jr., in part, is as follows:
“Q. Mr. Sterkx, you are the son of the defendant Walter W. Sterkx? A. I am.
“Q. What did you do with this property that you have marked “B” down here across the canal between the canal and MacArtlmr Drive on this tentative sketch? A. It tells you over in the right hand corner, that corner directly in front of you, I have a notation, I based it upon a principle. Number 1, 2, 3, 4, and 5 are the portions to be divided, A, B, C, and D are areas separated from and cut off of the property, what they will make easier the balancing of the property when they meet at a point within the land.
“Q. Well now A is just a little infinitesimal part as I recall that — A. Bout big enough for a sign board.
“Q. That is about big enough for a sign board here on MacArthur Drive of very little value to anyone. A. That’s right.
“Q. You apparently concluded then that there was no way to divide part *796 “B” — A. I didn’t conclude anything. I never went into that to any extent. I merely—
“Q. You decided it can or it can’t be— A. Oh, I say can be. In other words I could come in from seven points — I could come in from seven points or four sides and develop the property without touching anyone of the other points or without using any one of the other points or directions and as much as work is involved in trying to compute those values and as much as it would be only my opinion and inasmuch as I’ve been out of high school 20 years and don’t remember all of my algebra, I didn’t 'bother to go in other than to see that it icould worlc.
“Q. Well, in other words you don't know that it would work? A. Oh, I do know.
“Q. Well, you haven’t computed — A. I — Well, it’s this way, I reached the point to where it’s sufficient indication that it will work, that I am satisfied that it will work.
“Q. How many acres are in tract 1? A. I won’t go to — into how many acres in tract 1 because I haven’t established a value on tract 1.
“Q. But tbe point I’m making, Mr. Stei'kx, is that in drawing this plan here you have established — first, you have not established the acreage that is contained in each one of the lots — A. No, Pm dealing with principle—
“Q. Second, you have not established the value per acre on the different types of land that are contained in each one of the lots. A. George, that is the next step to — Mr. Hall, I haven’t done it to this extent that I have — Would you ask the question over again?
“Q. You have not established the value on an acreage basis on any of the lots? A. I’m not concerned with that.
“Q. You didn’t attempt, nor were you authorized to establish values or acreage that would bind anybody were you, Mr. Sterkx? A. My purpose was only to see if it was sufficient land area to be divided in kind.
*****
“Q. And then it is your opinion that exports could work out five lots allotting the acreage that the dollar value would call for so as to wind up with five lots of equal monitary amounts ? A. That’s right.” (Emphasis ours.)